**ORIGINAL**

# In the United States Court of Federal Claims

No. 15-536C
(Filed: October 9, 2015)

**FILED**

OCT - 9 2015

U.S. COURT OF
FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| KEVIN JOPPY a/k/a CALVIN JOPPY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | *Pro Se* Plaintiffs; Motion to Dismiss for |
| v. | ) | Lack of Subject Matter Jurisdiction; |
| | ) | RCFC 12(b)(1); Military Pay; 37 U.S.C. |
| THE UNITED STATES OF AMERICA, | ) | § 204; Statute of Limitations; 28 U.S.C. |
| | ) | § 2501. |
| Defendant. | ) | |
| | ) | |

*Kevin Joppy a/k/a Calvin Joppy*, Milton, FL, Plaintiff, *pro se*.

*Douglas K. Mickle*, Assistant Director, with whom were, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**KAPLAN, Judge:**

The plaintiff in this action, Kevin Joppy, alleges that he was unlawfully discharged from the United States Navy and that his military record should be corrected to reflect a medical disability retirement. Proceeding pro se, he challenges an adverse decision by the Board for Correction of Naval Records (BCNR) as arbitrary, capricious, and contrary to law, and seeks an award of backpay and disability benefits in addition to the correction of his records.

The case is before the Court on the government's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC). For the reasons set forth below, the government's motion is **GRANTED** and the complaint is **DISMISSED** without prejudice.[1]

---

[1] Mr. Joppy has filed a request to proceed in forma pauperis. To proceed in forma pauperis, a plaintiff must submit an affidavit that includes a list of all of their assets, a declaration that they are unable to pay the fees or give the security for an attorney, and a statement of the nature of their action and their belief that they are entitled to judgment. 28 U.S.C. 1915(a)(1). Here, plaintiff satisfied these requirements, and the Court therefore grants his application to proceed in forma pauperis for the limited purpose of dismissing the complaint.

## BACKGROUND

### I.    Mr. Joppy's Discharge from the Navy

Mr. Joppy served in the United States Navy from July 16, 1979, until March 13, 1981. Compl. at 2, 9; Def.'s Mot. to Dismiss ("Def.'s Mot.") A36, A46.[2] He was stationed in Newport, Rhode Island, and served on the USS Edson. Compl. at 2.

During his service, Mr. Joppy was involved in a series of verbal and physical altercations with senior officers. On February 14, 1980, Mr. Joppy was subject to non-judicial punishment for assaulting a chief petty officer, for disobedience of a lawful order, and for two assaults on non-petty officers. Def.'s Mot. A41, A51. On June 9, 1980, he was convicted by a summary court martial for striking a petty officer. Id. Finally, on September 4, 1980, he was convicted by a summary court martial for disrespecting a superior commissioned officer. Id.

After these violations of the Uniform Code of Military Justice, Mr. Joppy was evaluated by a psychiatrist at a Navy medical center on October 1, 1980, and again on January 29, 1981. Id. A46–47; A52–53. Following his second evaluation, he was diagnosed with explosive personality disorder. Id. At the time, Mr. Joppy was awaiting a special court martial proceeding for assaulting a chief petty officer. As a result of his diagnosis, the Navy dropped the court martial charges and administratively separated Mr. Joppy, finding him unsuitable for continued service. Id. A27, A36.[3]

### II.    BCNR Decisions

On August 4, 2002, Mr. Joppy filed a claim with the BCNR alleging that he was misdiagnosed by the psychiatrist and requesting that his records be corrected to reflect a medical discharge, which would afford him entitlement to disability pay and retirement benefits. Id. A31. On April 2, 2003, the BCNR found insufficient evidence to establish the existence of probable material error or injustice and denied the claim. Id. A29. Among other things, the Board reasoned that because "a personality disorder is not considered to be a disability under the laws administered by the Department of the Navy," and because Mr. Joppy had not "demonstrated that [he was] unfit for service by reason of physical disability, the Board was unable to recommend any corrective action." Id. A30.

---

[2] "Compl." refers to Mr. Joppy's complaint filed in this case. "Def.'s Motion to Dismiss" or "Def.'s Mot." refers to the government's "Motion to Dismiss Pro Se Complaint," and "A" cites to pages in the appendix to the government's Motion to Dismiss. "Pl.'s Res." refers to Plaintiff's "Brief In Opposition to Motion To Dismiss/Partial Summary Judgement."

[3] According to Mr. Joppy, the diagnosis of explosive personality disorder was inaccurate. Compl. at 6–7. He recounts witnessing the death of his "friend and shipmate at the hands of a killer mob in East Boston . . . changing his life forever." Id. at 7. The complaint suggests, therefore, that Mr. Joppy was suffering from the effects of post-traumatic stress disorder, not a personality disorder. Id.

Mr. Joppy subsequently submitted a second application for correction of his military records on April 14, 2014. Id. A6. As additional evidence in support of his claim, he directed the BCNR to a report by the GAO which he alleged reveals a military "policy to give those about to be discharged and [who] had psychological issues, to give them false evaluations . . . to reduce any future benefits they may claim." Id. A24. On June 22, 2015, the BCNR again denied Mr. Joppy's claim, noting that his "history of violent misconduct . . . [was] consistent with the diagnoses [sic] of explosive personality disorder." Id. A2–4.

## III.   This Action

Mr. Joppy filed a complaint in this Court on May 27, 2015, alleging that he was wrongfully and involuntarily discharged from active duty in the Navy. Compl. at 3. He contends that the administrative discharge did not comply with applicable Department of Defense regulations, and that the psychological evaluation did not determine that his "disorder was so severe that [his] ability to function in the military environment was significantly impaired." Id. at 4–5. He asks that the Court correct his records to reflect that he was medically discharged, providing entitlement to medical and retirement benefits, and seeks back pay and retroactive retirement benefits totaling $600,000. Id. at 8.

On July 15, 2015, the government filed a motion to dismiss the complaint for lack of jurisdiction under RCFC 12(b)(1). It argues that Mr. Joppy's claims are barred by the Tucker Act's six-year statute of limitations, 28 U.S.C. § 2501. Def.'s Mot. at 6. For the reasons set forth below, the Court agrees, and therefore dismisses Mr. Joppy's complaint without prejudice.

## DISCUSSION

In ruling on a motion to dismiss, the Court assumes that all factual allegations are true and construes all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982)). In considering a motion to dismiss for lack of subject matter jurisdiction, the court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013). Pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the Court that jurisdictional requirements have been met. Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2006). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right

to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

The Military Pay Act, 37 U.S.C. § 204, provides a separate source of substantive law that creates a right to money damages. It "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (quoting Sanders v. United States, 594 F.2d 804, 810 (Ct. Cl. 1979) (en banc)). Accordingly, the Military Pay Act "provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." Antonellis v. United States, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quoting Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004)).

While the Military Pay Act supplies a basis for this Court's exercise of jurisdiction under the Tucker Act, the Tucker Act's six-year statute of limitations states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The government argues that the six-year limitation period has been exceeded in this case and that, therefore, the complaint must be dismissed. The government is correct.

A claim for unlawful discharge from the armed services first accrues when the member is discharged from active duty status. Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). Here, Mr. Joppy's discharge from the Navy occurred in 1981. The complaint in this Court was filed more than three decades later, in 2015, well beyond the six-year limitations period. This Court, accordingly, lacks jurisdiction to consider his discharge claim.[4]

Further, Mr. Joppy's claim seeking revision of his military records to qualify him for disability pay and benefits is also barred by the statute of limitations. Claims regarding a service member's entitlement to retirement pay first accrue when "the appropriate military board either . . . denies the claim or refuses to hear it." Chambers v. United States, 417 F.3d 1218, 1224 (Fed. Cir. 2005). The BCNR denied Mr. Joppy's retirement pay claim on April 2, 2003, Def.'s Mot. A29, and the complaint in this case was filed more than twelve years later, on May 27, 2015. Although Mr. Joppy resubmitted his claim to the BCNR in 2014, the Federal Circuit has made clear that claims accrue after a decision by the "first statutorily authorized board that hears or refuses to hear the claim." Chambers, 417 F.3d, 1224. As a result, Mr. Joppy's disability retirement claim also falls outside the statute of limitations.

In his opposition to the government's motion, Mr. Joppy argues that the six-year limitations period should be equitably tolled. Pl.'s Res. at 3. But section 2501, which

---

[4] In his opposition to the government's motion, Mr. Joppy argues that his challenge to his discharge was timely in light of the "constructive service doctrine." Pl.'s Res. at 7. Under that doctrine, service members who have been illegally discharged are "deemed to have continued in active service until their legal separation" for purposes of determining their entitlement to backpay. See Christian v. United States, 337 F.3d 1338, 1347 (Fed. Cir. 2003). The constructive service doctrine, however, is a "legal fiction," id., that has no bearing on the accrual of the statute of limitations, which occurs at the time of the plaintiff's actual discharge.

4

establishes the statute of limitations as a jurisdictional prerequisite for Tucker Act claims, "sets an 'absolute' time limit for filing suit in the Court of Federal Claims" that is not subject to equitable tolling. FloorPro, Inc. v. United States, 680 F.3d 1377, 1382 (Fed. Cir. 2012) (quoting John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008)). Therefore, Mr. Joppy's request that the Court apply equitable tolling must be rejected.

Mr. Joppy further contends that the limitations period does not bar this action because the government engaged in "fraud" and "misrepresentation" with respect to his claims. Pl.'s Res. at 3, 7, 11–13. He argues that although the Navy's discharge policies with respect to individuals diagnosed with personality disorders violated law and were allegedly being investigated by the GAO, the Navy continued to follow those policies. Id. He states that, at the time he filed his complaint with the BCNR in 2002, he did not know that Department of Defense had been unlawfully discharging members of the service and that he did not learn that the discharges were unlawful until the media allegedly exposed the violations of law. Id. at 13.

The Court interprets this contention as one based on the established doctrine that the accrual of a claim against the United States may be suspended, for purposes of 28 U.S.C. § 2501, "until the claimant knew or should have known that the claim existed." Martinez v. United States, 333 F.3d at 1319. But "[t]he 'accrual suspension' rule is 'strictly and narrowly applied: . . . [The plaintiff] must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date'." Id. (alteration in original) (quoting Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985)). Further, it is knowledge of the relevant facts, not of their legal consequences, which determines the accrual date. Young v. United States, 529 F.3d 1380, 1385 (Fed. Cir. 2008) (citing United States v. Kubrick, 444 U.S. 111, 122 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment.")).

Here, Mr. Joppy has not shown that the government concealed its act of separating him based on the personality disorder diagnosis, nor has he shown that his injury was "inherently unknowable" at the accrual date. To the contrary, the record shows that Mr. Joppy was aware of and expressed disagreement with his unsuitability designation at the time of his discharge.[5] And while he may not have understood or known of the legal theory upon which he now wishes to challenge his separation, as noted, knowledge of applicable law does not affect a claim's accrual date.

---

[5] As noted above, Mr. Joppy met a psychiatrist on October 1, 1980 and January 29, 1981. Def.'s Mot. A41, A51. He was informed in writing about the Navy's administrative discharge and consulted with an attorney about the consequences of his discharge relating to his access to veterans' benefits. Id. A44–45. He also received a notice recommending his administrative discharge and the DD-214 discharge form. Id. A43; A36. Thus, while the Court accepts at face value Mr. Joppy's representation that he was suffering from significant stress at the time of his discharge, Pl.'s Res. at 18, he does not claim (nor could he) that he was unaware of the fact of his discharge when it occurred. And even if that were his claim, it is clear that he was well aware of all relevant facts in 2002, when he filed his first record correction request with the BCNR.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** plaintiff's motion to proceed in forma pauperis, **GRANTS** the government's motion to dismiss, and **DISMISSES** plaintiff's complaint for lack of jurisdiction, without prejudice. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Judge